# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>    Plaintiff,<br><br> v.<br><br>DROPBOX, INC.,<br><br>    Defendant. | Case No. 6:15-cv-00465-RWS-JDL |

**PLAINTIFF REALTIME DATA LLC'S OPPOSITION TO
DEFENDANT DROPBOX, INC.'S MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  BACKGROUND ....................................................................................................................2

    A.   Realtime Has Been Actively Present in this District Since 2009 ............................2

    B.   The Court Is Already Familiar with Patents-in-Suit .................................................3

III. LEGAL STANDARD ............................................................................................................4

IV.  DROPBOX CANNOT SATISFY ITS BURDEN TO TRANSFER THIS
     ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA ................................5

    A.   The Private Interest Factors Weigh Against Transfer...............................................5

        1.   The Sources of Proof are Not "Much More Accessible" from N.D. Cal...........5

        2.   The Northern District of California Does Not Possess More Relevant
           Subpoena Power.................................................................................................7

        3.   Notwithstanding Dropbox's Cherry-picking, N.D. Cal. is Not More
           Convenient for Most of the Potential Witnesses................................................9

        4.   The "Practical Problems" Here Strongly Weigh Against Transfer .................11

    A.   The Public Interest Factors Also Weigh Against Transfer .....................................13

        1.   N.D. Cal. Has No Greater Interest ...................................................................14

        2.   The Other Public Interests Factors are Neutral................................................14

V.   CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. Verizon Wireless*
   No. 6:15-cv-00045-RWS-JDL (E.D. Tex. Aug. 12, 2015) .......................................................... 8

*Adrain v. Genetec Inc.*
   No. 2:08-cv-423, 2009 U.S. Dist. LEXIS 86855 (E.D. Tex. Sept. 22, 2009) ........................... 12

*Eolas Techs., Inc. v. Adobe Sys., Inc.*
   Case No. 6:09-CV-446, 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) .............. 11

*Geotag, Inc. v. Aromatique, Inc.*
   No. 2:10-cv-570, 2013 U.S. Dist. LEXIS 173481 (E.D. Tex. Jan. 14, 2013) ........................... 11

*Geotag, Inc. v. OnTargetJobs, Inc.*
   No. 2:13-cv-0064-JRG (E.D. Tex. Mar. 7, 2014) ............................................................. 5, 7, 14

*GeoTag, Inc. v. Starbucks Corp.*
   No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ................................................ 13

*In re EMC Corp.*
   501 F. App'x 973 (Fed. Cir. 2013) ..................................................................................... 6, 11

*In re Genentech, Inc.*
   566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................ 5, 9

*In re Google Inc.*
   412 Fed. Appx. 295 (Fed. Cir. 2011) ...................................................................................... 11

*In re Hoffmann-La Roche Inc.*
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................... 14

*In re Morgan Stanley*
   417 F. App'x 947 (Fed. Cir. 2011) ......................................................................................... 13

*In re TS Tech United States Corp.*
   551 F.3d 1315 (Fed. Cir. 2008) ........................................................................................ 11, 14

*In re Verizon Bus. Network Servs. Inc.*
   635 F.3d 559 (Fed. Cir. 2011) ................................................................................................. 13

*In re Vistaprint Ltd.*
   628 F.3d 1342 (Fed. Cir. 2010) .................................................................................... 1, 11, 12

*In re Volkswagen AG*
   371 F.3d 201 (5th Cir. 2004) ..................................................................................................... 4

*In re Volkswagen of Am., Inc.*
   545 F.3d 304 (5th Cir. 2008) .................................................................................................. 4

*In re Volkswagen of Am., Inc.*
   566 F.3d 1349 (Fed. Cir. 2009) ........................................................................................... 4, 11

*In re Zimmer Holdings, Inc.*
   609 F.3d 1378 (Fed. Cir. 2010) ............................................................................................. 13

*Ingeniador, LLC v. Adobe Sys., Inc.*
   No. 2:12-cv-00805-JRG, 2014 U.S. Dist. LEXIS 3308 (E.D. Tex. Jan. 10, 2014) .............. 6, 14

*Innovative Global Sys. LLC v. OnStar, LLC*
   Case No. 6:10-cv-574-LED-JDL, ECF. No. 156, at *12 (E.D. Tex. Feb. 14, 2012) ................ 13

*Invensense, Inc. v. STMicroelectronics, Inc.*
   No. 2:13-cv-00405-JRG, 2014 WL 105627, at *6 (E.D. Tex. Jan. 10, 2014) ........................... 8

*Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc.*
   Case No. 6:11-cv-578-LED, ECF No. 36, at *7 (E.D. Tex. Sept. 26, 2012) ........................... 13

*Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*
   No. 2:08-CV-478 (TJW), 2009 U.S. Dist. LEXIS 103394 (E.D. Tex. Oct. 23, 2009) ............. 12

*Nexus Display Techs., v. Lenovo, Inc.*
   No. 2:14-cv-763 (E.D. Tex. Aug. 25, 2015) ...................................................................... 9, 12

*Plant Equip. Inc. v. Intrado Inc.*
   Case No. 2:09-cv-395-TJW, 2010 U.S. Dist. LEXIS 59517 (E.D. Tex. June 15, 2010) ............ 5

*Rockstar Consortium US LP v. Google Inc.*
   No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692 (E.D. Tex. Sept. 23, 2014) ....................... 7, 8

*Tex. Data Co., L.L.C. v. Target Brands, Inc.*
   771 F. Supp. 2d 630 (E.D. Tex. 2011) ..................................................................................... 4

*Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*
   No. 2:10-cv-490-JRG, 2013 WL 2241947 (E.D. Tex. May 21, 2013) ...................................... 6

*Virtualagility, Inc. v. Salesforce.com, Inc.*
   No. 2:13-cv-00011-JRG, 2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014) .................. 9

**Statutes**
Fed. R. Civ. P. 45 ............................................................................................................................ 7

I.  **INTRODUCTION**

Defendant Dropbox, Inc. ("Dropbox") cannot meet its "significant burden" to show that the Northern District of California ("N.D. Cal.") is "clearly more convenient" than this District. Each of the relevant private and public interest factors either weigh against transfer, or are neutral at best. For instance, Dropbox has failed to demonstrate that it would be inconvenienced by having to produce documents in this District – its source code will be inspected in San Francisco even if this case stays in Texas, and Dropbox has not identified any documents or other evidence that cannot be produced electronically. Nor has Dropbox identified any third party witnesses with relevant, material knowledge whose testimony would be necessary for trial. Dropbox simply cherry-picked three purported prior art inventors believed by Dropbox to live in or near N.D. Cal. At best, Dropbox has identified only three of its own employees as "potential" party witnesses. But any inconvenience to these witnesses is more than offset by the significant inconvenience to Realtime's witnesses that would occur if this case is transferred to N.D. Cal.

The final private interest factor, which focuses on judicial economy and is a "paramount consideration" in the transfer analysis, strongly disfavors transfer. This Court has substantial experience with two of the patents-in-suit (the '992 and '530 patents) from prior cases – one was settled on the morning of trial just last year. Dropbox's contention that the prior litigation involved "different patents" is simply false. This Court's familiarity with the patents-in-suit, coupled with the fact that there are seven other co-pending consolidated cases before the Court involving the same patents, "provides a substantial justification for maintaining suit in the Eastern District of Texas." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). Notably, eleven of the consolidated defendants have *not* sought transfer and will thus remain in this District as the deadline for filing transfer motions has passed. Transferring this case to a court unfamiliar with the patents-in-suit would not only consume unnecessary judicial resources, but would also create a significant risk of inconsistent rulings.

As to the public interest factors, Dropbox has not and cannot demonstrate that N.D. Cal. has any more of an interest in adjudicating this case than this District given that the accused

products are web-based products used by customers nationwide. The mere fact that Dropbox is headquartered in N.D. Cal. does not warrant transfer. Additionally, Dropbox's efforts to mischaracterize Realtime's presence in this District as an artifact of litigation are unsubstantiated. Realtime has maintained an office in Tyler for over six years, where it conducts business related to the development of its patent portfolio, and where it stores relevant documents and physical prototypes. Indeed, Realtime recently opened another office in Plano and hired an electrical engineer to assist with these efforts.

Dropbox admits that the remaining public interest factors are neutral. Because Dropbox has failed to demonstrate that a single factor favors transfer, let alone that N.D. Cal. is clearly more convenient, Dropbox's motion should be denied.

## II.     BACKGROUND

Dropbox and each of the other defendants in the eight consolidated cases are accused of infringing the U.S. Patent Nos. 7,378,992, 7,415,530, 8,643,513, and 9,116,908 (the "patents-in-suit"). Lead Case No. 6:15-cv-00463-RWS-JDL, Dkt. No. 16. The inventions claimed in the patents-in-suit relate to novel systems and methods for efficient digital data compression using numerous innovative techniques based on, for example, particular attributes of the data.

### A.     Realtime Has Been Actively Present in this District Since 2009

While Realtime is a New York company, Realtime and its intellectual property portfolio have a rather long history and presence in this District. In October 2009, Realtime opened an office in Tyler for the purpose of promoting its licensing efforts relating to its digital-data compression patent portfolio. Declaration of Stephen McErlain ("McErlain Decl.") at ¶ 4. Realtime opened its Tyler office in part to further its licensing efforts and to stage many of its physical prototypes and documents relating to its anticipated trial in the *Packeteer* action (Case No. 6:08-cv-00144). *Id*. At the time, this Court had already construed the terms of the asserted patents in the *Packeteer* action, which involved the '992 Patent, asserted here, and numerous other patents related to the other patents-in-suit. *See* Case No. 6:08-cv-00144, Dkt. No. 371.

Since October 2009, Realtime has maintained a significant presence in this District. Shortly after opening the office, substantially all of Realtime's documents were either physically located at Realtime's Tyler office or exist electronically and will be collected from Realtime's Tyler office. McErlain Decl. at ¶ 5. These include Realtime's patent file histories, licenses, and other documents relating to the patents-in-suit. *Id*. Realtime's Tyler office also includes physical devices and prototypes developed by Realtime, which are available for inspection at the Tyler office. *Id*. The devices include original X3 PCI accelerator cards, X3 Network Attached Storage Servers, X3 Web Servers, X3 Compaqtor, X3 Snap Servers, Realtime WAN Accelerators, Realtime T1 point-to-point bandwidth multipliers, and Realtime Market Data Accelerators, including data feed simulators, monitors and compression engines. *Id*. The Tyler office also houses original source code and demonstration software. *Id*. Moreover, over the past six years, Realtime has conducted numerous meetings and communications with and between various members of its Board of Directors in its Tyler office. *Id*. at ¶ 6. This year, Realtime opened yet another office in this District, this time in Plano. *Id*. at ¶ 7. Realtime plans to expand its patent licensing and development activities through the Plano office and recently hired an electrical engineer in furtherance of these plans. *Id*.

**B.     The Court Is Already Familiar with Patents-in-Suit**

Realtime's increased presence in this District has coincided with this Court's increase in familiarity with the patents-in-suit. In addition to ruling on claim construction and summary judgment motions in the *Packeteer* action, this Court and the parties involved in that case filed over 850 other orders, motions, and other pleadings. For example, since the *Packeteer* action, Realtime also brought the *MetroPCS* action (Case No. 6:10-cv-00493-LED-JDL), which also involved patents that are asserted here, including the '530 patent, as well as numerous other patents that are related to the '992, '513, and '908 Patents. And like *Packeteer*, *MetroPCS* involved numerous claim construction hearings and rulings involving many terms used in the patents-in-suit. Case No. 6:10-cv-00493-LED-JDL, Dkt. Nos. 287, 328, 438. In total, this Court

and the parties involved in that case filed over 680 orders, motions, and other pleadings. This case settled on the morning of trial last year in March 2014.

## III. LEGAL STANDARD

To prevail on a motion brought under 1404(a), Dropbox bears "a significant burden … to show good cause" to support its motion to transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*"); *see also Tex. Data Co., L.L.C. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638-39 (E.D. Tex. 2011) ("the Court … recognizes the significance of the burden and does not take it lightly"). To satisfy this significant burden, Dropbox must demonstrate that N.D. Cal. is a "clearly" more convenient forum than this District. *Volkswagen II*, 545 F.3d at 315.

When deciding whether another forum is clearly more convenient, courts balance the private interests of the parties and the public interests in the fair and efficient administration of justice.[1] The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the testimony of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.* Though no single factor is dispositive, the creation of parallel lawsuits in different jurisdictions is a "paramount consideration" weighing against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").

---

[1] The threshold inquiry when analyzing a case's eligibility for transfer is whether the suit could have been brought in the proposed transferee district. *Volkswagen II*, 545 F.3d at 312. Realtime does not dispute that this case could have been brought in N.D. Cal.

IV. **DROPBOX CANNOT SATISFY ITS BURDEN TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA**

A. **The Private Interest Factors Weigh Against Transfer**

Each of the private interest factors either weigh against transfer, or are neutral at best. Dropbox has failed to demonstrate that it would be inconvenienced by having to produce documents in this District, and, on balance, this District would be equally if not more convenient for the identified party and third party witnesses. Additionally, judicial economy interests heavily weigh against transfer in light of this Court's familiarity with the patents-in-suit and the seven other pending consolidated cases involving the same patents.

1. **The Sources of Proof are Not "Much More Accessible" from N.D. Cal.**

The mere fact that many of Dropbox's relevant documents and evidence may be located in San Francisco does not warrant transfer, as Dropbox contends. Mot. at 8-9. Dropbox must show that absent transfer, production would impose a "significant and unnecessary burden." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also Plant Equip. Inc. v. Intrado Inc.*, Case No. 2:09-cv-395-TJW, 2010 U.S. Dist. LEXIS 59517, at *8 (E.D. Tex. June 15, 2010) (failure to show that transporting evidence would pose a "significant additional inconvenience" weighs against transfer). Dropbox has failed to do so.

For example, Dropbox does not contend that its documents are incapable of being produced electronically, presumably because they can be produced electronically, which would minimize if not completely eliminate any purported inconvenience to Dropbox. In fact, Dropbox's statement that its evidence is maintained "on servers accessed from San Francisco" (Mot. at 9) indicates that at least some of its evidence is already in electronic form. Because "the bulk of evidence in patent suits is today produced by electronic means and is easily produced to remote locations, the Court [should] not overweigh the significance of this factor." *Geotag, Inc. v. OnTargetJobs, Inc.*, No. 2:13-cv-0064-JRG, slip op. at 3 (E.D. Tex. Mar. 7, 2014) (attached as Ex. A[2]); *see also Ingeniador, LLC v. Adobe Sys., Inc.*, No. 2:12-cv-00805-JRG, 2014 U.S. Dist.

---

[2] The exhibits cited herein ("Ex. __") refer to exhibits attached to the declaration of Reza Mirzaie ("Mirzaie Decl.").

5

LEXIS 3308, at *5 (E.D. Tex. Jan. 10, 2014) ("in the modern era the inconvenience of making documents available some distance from their source is minimal").

Dropbox's allegation that its source code is only available for inspection in San Francisco (Mot. at 9) also does not support transfer.  Because Realtime will have to travel to San Francisco to inspect Dropbox's source code, the burden to Dropbox of producing its source code (and the burden to Realtime of inspecting said source code) will be the *exactly the same* regardless of whether this case is transferred to N.D. Cal. or remains in this District.  Dropbox cannot legitimately contend that N.D. Cal. is "clearly more convenient." And the minimal inconvenience to Dropbox from having to produce its documents in this District is offset by the fact that Realtime's documents and physical evidence are located in this District.  Specifically, Realtime's Tyler office houses the patent file histories, licenses, and other documents relating to the patents-in-suit, as well as physical devices and prototypes developed by Realtime, original source code, and demonstration software.  McErlain Decl. at ¶ 5.

In an attempt to downplay these facts, Dropbox asserts that Realtime's contacts to this District are "recent," "ephemeral," and "an artifact of litigation."  Mot. at 2, 7, 9-10.  This is unsupported and, in fact, contradicted by the record.  Realtime opened its Tyler office in **October 2009** – six years ago, and well *after* first initiating litigation in Texas – in order to, *inter alia*, further promote its licensing efforts.  McErlain Decl. at ¶ 4.  Realtime has conducted business in and housed its relevant documents and physical products in Tyler ever since.  *Id.* at ¶¶ 5-6.  Moreover, "[m]otions to transfer venue are to be decided based on "the situation which existed when suit was instituted." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *see also Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*, No. 2:10-cv-490-JRG, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) (finding that the fact that certain relevant evidence changed locations irrelevant; "[m]otions to transfer venue are not decided on a series of changing facts, but instead should be evaluated based on the situation which existed when suit was filed").  At the time this suit was filed, the bulk of Realtime's relevant evidence was, and still is, located in Tyler.  McErlain Decl. at ¶ 5.

Dropbox's argument that evidence regarding a certain prior art system is "likely to be located in the Northern District of California" (Mot. at 10) is likewise unavailing. As an initial matter, Dropbox has not shown that any such "evidence" regarding the cited prior art system even exists, let alone that it actually located in N.D. Cal. Nor has Dropbox explained why such evidence would be necessary for trial. Therefore, such allegations should be given little if any weight. *See Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *4 (E.D. Tex. Sept. 23, 2014) (finding defendant's speculative assertion that witnesses and documents "are likely in the Northern District [of California]" did not support transfer). At any rate, Dropbox's selective identification of a single potential prior art system associated with N.D. Cal. does not meet its burden, as Dropbox conveniently failed to mention any other prior art system not developed in N.D. Cal. *See id.* at *5 (defendant failed to meet its burden where defendant "selectively identified possible prior art witnesses in the Northern District of California and omitted possible witnesses in other states"). This factor is neutral.

### 2. N.D. Cal. Does Not Possess More Relevant Subpoena Power

The December 2013 amendments to Rule 45 *broaden* this Court's subpoena power. In analyzing those amendments, this Court explained:

> The Court in which an action originates may now issue subpoenas nationwide so long as the subpoena does not require a person to attend a trial, hearing or deposition more than 100 miles from a place where the person resides, is employed, or regularly transacts business. Fed. R. Civ. P. 45(a)(2), (c)(1)(a). Moreover, a Court may compel a witness to attend a trial anywhere within the state where the person resides, is employed, or regularly transacts business in person, so long as the person "would not incur substantial expense." *Id.* at (c)(1)(B)(iii) . Thus, this prong of a transfer inquiry now properly focuses on ***the presence or absence of potential third-party witnesses within the transferor and transferee venues' respective states.***

*OnTargetJobs* (Ex. A), slip op. at 3-4 (emphasis added).

Because this factor focuses only on third-party witnesses, Dropbox's argument that N.D. Cal. possesses more relevant subpoena power because "all of Dropbox's personnel responsible for the research, design, development, marketing and sale of the accused technology work at

Dropbox's San Francisco headquarters" (Mot. at 13) must be rejected. *See id.*; *Invensense, Inc. v. STMicroelectronics, Inc.*, No. 2:13-cv-00405-JRG, 2014 WL 105627, at *6 (E.D. Tex. Jan. 10, 2014) (third-party witnesses, rather than party witnesses, are the focus of the compulsory process prong because parties are presumed to be able to produce their own witnesses). This is particularly true because Dropbox double-counts by identifying these same witnesses in its argument regarding the third private interest factor, the "cost of attendance for *willing* witnesses." Mot. at 10.

As to third-party witnesses, Dropbox has only identified three purported prior art inventors. But again, it appears that Dropbox simply selected these three witnesses because they happen to live in or near N.D. Cal. This kind of cherry-picking is wholly insufficient to satisfy Dropbox's burden. *Rockstar Consortium*, 2014 WL 4748692, at *5.

Dropbox has also failed to show that these prior art witnesses have knowledge of material facts or that their testimony would be necessary for trial. As this Court has previously noted, "inventors of prior art rarely, if ever, actually testify at trial." *Adaptix, Inc. v. Verizon Wireless*, No. 6:15-cv-00045-RWS-JDL, slip op. at 8 (E.D. Tex. Aug. 12, 2015) (attached as Ex. B). Accordingly, this Court has rejected arguments just like Dropbox's argument here because, "without even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Id*. If this Court were to give weight to such irrelevant witnesses, Realtime could just as easily point to inventors of other patents asserted as "prior art" in previous litigation. *See, e.g.*, Ex. D (named inventors for U.S. Patent No. 7,190,284).

Even assuming the testimony of Dropbox's cherry-picked third parties is necessary, Dropbox's argument would still be foreclosed by Fifth Circuit law. As this Court has held, both "the E.D. Tex. and the N.D. Cal. [] may instruct these witnesses to attend and subject them to being deposed [and the] Fifth Circuit observed that a videotape deposition would serve as an acceptable substitute for live testimony." *Nexus Display Techs., v. Lenovo, Inc.*, No. 2:14-cv-

8

763, slip op. at 7 (E.D. Tex. Aug. 25, 2015) (attached as Ex. C) (citations omitted).  And because "[Dropbox] will know beforehand that their depositions will be used at trial, any inconvenience of not having the witnesses appear live is even reduced further."  *Virtualagility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 U.S. Dist. LEXIS 12015, at *17-19 (E.D. Tex. Jan. 31, 2014).  Dropbox's briefing fails to even recognize the possibility of presenting the witnesses' testimony by videotaped deposition, let alone explain why it would be inconvenienced by being required to do so.  The potential minor inconvenience of offering video testimony from its third party witnesses, assuming they are even necessary, does not support transfer.  This factor is neutral.

> **3.    Notwithstanding Dropbox's Cherry-picking, N.D. Cal. is Not More Convenient for Most of the Potential Witnesses**

Naming only three "potential" party witnesses, Dropbox argues that N.D. Cal. is clearly more convenient than this District "for all of Dropbox's witnesses" with relevant information.  Mot. at 10.  But Dropbox's motion fails also to allege with any specificity what type of relevant knowledge is or may be held by these witnesses, or why they would be necessary for trial.  Dropbox simply provided vague, generalized "topics" for each witness (e.g., "the accused technology," "financials," and "marketing and business").  Mot. at 10.  This is insufficient.  *Genentech*, 566 F.3d at 1343 (movant must show that its witnesses have "knowledge of material facts relevant to the case").[3]

Dropbox's argument that "all" of its potential witnesses in San Francisco is also contradicted by the record.  Dropbox fails to mention anywhere in its motion that it has a significant number of employees with relevant information that are located in its large Austin office, which is far closer to Tyler than San Francisco.  According to Dropbox's website and own materials, its Austin office is the second main U.S. location, after San Francisco, and it has

---

[3] In the end, Dropbox's selection of three "potential" witnesses in San Francisco amounts to little more than speculation that it would "require the three specifically identified witnesses who work [in the Northern District of California] to actually attend trial."  *Eon Corp. IP Holdings, LLC v. Asustek Computer Int'l*, No. 6:12-cv-941, slip op. at 7 (E.D. Tex. Mar. 28, 2014).

grown over the past three years to build out the "sales and user operations teams for the Americas" and focus on "supporting [Dropbox's] 300 million users and expanding [] efforts around Dropbox for Business." Exs. H-J. And of the hundreds of Dropbox employees in Austin, several are high-level personnel that are likely to have relevant information regarding the marketing, sales, and technical aspects of the infringing products. Just three of these include TJ Williams, who is "Head of Sales," David Fielder, the "Datacenter Operations Design and Build Manager," and Renee Manuel, "Enterprise Account Executive." Exs. E-G.

The weight of this factor is even further reduced in light of the fact that all of Realtime's witnesses would be significantly inconvenienced if required to travel to N.D. Cal. James Fallon, inventor of the patents-in-suit, is a resident of Armonk, New York. Fallon Decl. at ¶ 3. He possesses material knowledge regarding, *inter alia*, conception and reduction to practice of the inventions disclosed in the patents-in-suit, the design and development of the patents-in-suit, commercialization efforts relating to the patents-in-suit, ownership and assignment of the patents-in-suit, as well as the prosecution of the patents-in-suit. Jerry Padian and Steve McErlain also reside in New York, and have material knowledge regarding, *inter alia*, Realtime's claims and defendants' defenses and counterclaims, ownership of the patents-in-suit, prior litigation concerning the patents-in-suit, licensing of and other attempts to commercialize the patents-in-suit, Realtime's patent licensing policies, and Realtime's financial information that may be relevant to damages issues. Padian Decl. at ¶¶ 2-3; McErlain Decl. at ¶ 2. The distance from New York to San Francisco is nearly twice the distance between New York and Tyler. Mirzaie Decl. at ¶ 5. Additionally, each of these witnesses would still need to travel to this District for the other consolidated cases, *on top of* having to travel over 2,500 miles to San Francisco in the event this case is transferred.

Transfer would thus result in Realtime's witnesses having to travel a combined total of approximately 11,724 miles in the event this case is transferred – about 2.5 times the distance Dropbox's identified witnesses would have to travel (~4,725 miles) if this case remains in this District. *See* Mirzaie Decl. at ¶ 5. Therefore, on balance, this District is more convenient than

N.D. Cal., and Dropbox cannot meet its burden of showing that N.D. Cal. is clearly more convenient. *See In re TS Tech United States Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (under the Fifth Circuit's "100-mile" rule, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). And as discussed further below, any additional costs or inconvenience associated with Dropbox's witnesses having to travel to this District will be more than offset by the judicial economy gains from having this case adjudicated by this Court. *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-570, 2013 U.S. Dist. LEXIS 173481, at *34 (E.D. Tex. Jan. 14, 2013) ("Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'"). Thus, this factor weighs against transfer.

### 4. The "Practical Problems" Here Strongly Weigh Against Transfer

"Practical problems include those that are rationally based on judicial economy." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, Case No. 6:09-CV-446, 2010 U.S. Dist. LEXIS 104125, at *27 (E.D. Tex. Sept. 28, 2010). The existence of multiple suits involving the same or similar issues may create practical difficulties that "will weigh heavily in favor or against transfer." *Id.* Indeed, the "existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen III*, 566 F.3d at 1351; *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("having one trial court decide all the[] claims clearly furthers" the "orderly, effective administration of justice"). For example, in *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010), the Federal Circuit held that the district court's experience with the patent-in-suit from prior litigation, coupled with the fact that there were other co-pending cases before the court involving the same patent, provided a "substantial justification for maintaining suit in the Eastern District of Texas." *See also EMC Corp.*, 501 F. App'x at 976 (judicial economy benefits arise from "district court's experience with a patent in prior litigation and the co-pendency of cases

involving the same patent"); *Nexus Display* (Ex. C), slip op. at 9 (existence of related action pending before the Court "strongly disfavors transfer").

As in *Vistaprint*, this Court has substantial experience with at least two of the patents-in-suit from prior litigation. In the *Packeteer* and *MetroPCS* Actions, which involved the '992 and '530 patents, respectively, the Court held hearings and issued orders on several substantive issues and motions, including claim construction and summary judgment. Mirzaie Decl. at ¶¶ 2-3. The cases settled just before trial after the parties submitted their proposed jury instructions and trial exhibit lists, and in fact *MetroPCS* was resolved just last year. Additionally, the eight active related cases, all of which have been consolidated for pre-trial purposes, undeniably involve substantial overlap in issues of fact and law. Indeed, this Court specifically found that because the cases "involve a common question of law or fact, consolidation of the cases would promote efficient case management." Dkt. No. 15. And the Court has also gained at least some additional familiarity with parties' claims and defenses as several defendants in the consolidated cases, including Dropbox, filed motions to dismiss under 35 U.S.C. § 101, which are nearly fully briefed. *See* Dkt. Nos. 23, 26, 31, 38, 44. Dropbox simply ignores these facts.

Far from promoting the interest of justice, transferring this case "will only consume unnecessary additional judicial resources" by requiring another court to address overlapping issues, and would create a risk of inconsistent rulings. *Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:08-cv-478 (TJW), 2009 U.S. Dist. LEXIS 103394, at *14 (E.D. Tex. Oct. 23, 2009); *see also Adrain v. Genetec Inc.*, No. 2:08-cv-423, 2009 U.S. Dist. LEXIS 86855, at *9-10 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication.").

The cases cited by Dropbox in an attempt to undermine the significance of this factor (*see generally* Mot. at 13-14) merely stand for the proposition that, where the other transfer factors

12

*clearly* favor of transfer, the existence of co-pending litigation, ***by itself***, should not preclude transfer. *See, e.g.*, *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (noting the "stark contrast" between the convenience of the venues); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (the existence of a co-pending suit with a "limited relationship" to the case at bar did not warrant transfer "where the other convenience factors *clearly* favor [transfer]"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice *may* be to transfer to the *far more convenient* venue even when the trial court has some familiarity with a matter from prior litigation") (emphasis added); *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (granting motion to transfer venue where Court had no material prior familiarity with patent-in-suit and there were no "common issues" between defendants).; *Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc.*, No. 6:11-cv-578-LED, ECF No. 36, at *7 (E.D. Tex. Sept. 26, 2012) (granting motion to transfer where Court had no familiarity with the patent-in-suit and other factors clearly favored transfer); *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-cv-574-LED-JDL, ECF. No. 156, at *12 (E.D. Tex. Feb. 14, 2012) (granting motion to transfer where Court had not yet issued any final claim construction order, other factors favored transfer, and Plaintiff serially filed complaints without effectuating service).

In contrast, here, ***no factor*** clearly favor of transfer, and, in addition to the co-pending litigation, this Court is already familiar with two of the patents-in-suit. Judicial economy interests thus weigh heavily against transfer.

### A. The Public Interest Factors Also Weigh Against Transfer

None of the public interest factors favor transfer. Dropbox cannot show that N.D. Cal. has any greater of an interest than this District, as the Accused Instrumentalities are web-based products and systems that are used nationwide, and Dropbox does not dispute that the other factors are neutral.

### 1. N.D. Cal. Has No Greater Interest

Dropbox argues that N.D. Cal. has a "far greater interest" in this case because "Dropbox has been headquartered and doing business in the Northern District of California for more [than] eight years." Mot. at 15. But this Court has expressly rejected such arguments, "as they amount to arguments that the Court should transfer the case because jurors in the transferee district will be more sympathetic to a particular party." *OnTargetJobs* (Ex. A), slip op. at 6; *see also Ingeniador*, 2014 U.S. Dist. LEXIS 3308, at *10-11. Dropbox's mere presence in N.D. Cal. does not support transfer.

This factor weighs in favor of transfer only "if there are significant connections between a particular venue and the events that gave rise to a suit." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). This is certainly not the case here, as the accused instrumentalities are used by Dropbox's customers nationwide. Dropbox, of course, does not deny that the accused instrumentalities are used by customers in Texas and in this District. Moreover, Realtime has maintained an office in Tyler for over six years, where it conducts business related to the licensing and commercialization of the patents-in-suit. McErlain Decl. at ¶ 4. Dropbox has offered speculation, but no evidence, that this is anything but a legitimate Texas presence. Therefore, N.D. Cal. has "no more or less of a meaningful connection to this case than [this or any other District]." *TS Tech*, 551 F.3d at 1321.

### 2. The Other Public Interests Factors are Neutral

Realtime does not dispute that the remaining public factors (time to trial, familiarity with the governing law, and conflicts of law) are neutral.

## V. CONCLUSION

Dropbox has failed to meet its burden of showing that the Northern District of California is clearly more convenient than this District. Dropbox's motion to transfer should be denied.

| | |
|---|---|
| Dated: September 21, 2015 | RUSS AUGUST & KABAT |
| | |
| | /s/ *Reza Mirzaie* |
| | Reza Mirzaie (CA SBN 246953 |
| | Marc A. Fenster (CA SBN 181067) |
| | 12424 Wilshire Boulevard, 12th Floor |
| | Los Angeles, California 90025 |
| | Telephone: (310) 826-7474 |
| | Facsimile: (310) 826-6991 |
| | mfenster@raklaw.com |
| | rmirzaie@raklaw.com |
| | |
| | *Attorneys for Plaintiff Realtime Data LLC* |

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile, and/or first class mail on this date.

                                                /s/ *Reza Mirzaie*
                                                Reza Mirzaie